July 20, 1977

# 77-43 MEMORANDUM OPINION FOR ASSISTANT GENERAL COUNSEL OF THE GENERAL ACCOUNTING OFFICE

## Compensation of Court-Appointed Witnesses*

This is in response to your request for our opinion on the proper agency to make payment for the compensation of court-appointed expert witnesses in cases handled by the Department of Justice. We conclude that where a court appoints an expert witness pursuant to Rule 706 of the Federal Rules of Evidence,[1] as a matter of law either the Administrative Office of the United States Courts or the litigating agency is required.to compensate such witnesses as set forth in subsection (b) of Rule 706. It is our opinion that in criminal cases it is the Administrative Office, and in condemnation and "other civil cases" it is the agency initiating and litigating the action.[2]

In our view, Rule 706(b) establishes two categories of cases for determining how court-appointed expert witnesses are compensated. In the first category are those expert witnesses appointed in criminal and condemnation cases, as to which the expert witness is to be compensated entirely by the United States. Within this category are two means for paying court-appointed expert witnesses' fees. In criminal cases the expert witness is to be compensated by the Administrative Office from funds appropriated for expenses of maintenance of the courts, and in condemnation cases by the agency handling the action from its general

---

*See the subsequent related decision of the Comptroller General, B-139703 (February 6, 1979).

[1] It should be noted that a trial judge has the inherent power to appoint his own expert. See, e.g., Scott v. Sprange Bros. Inc., 298 F. 2d 928 (2d Cir. 1962). Such an expert may not qualify as an expert witness under the specific requirements of Rule 706 of the Federal Rules of Evidence. In this situation it is our opinion that the court's expert is to be compensated by the Administrative Office of the United States Courts from funds appropriated for expenses of maintenance of the courts. This has been recognized as the appropriate method of compensation by the Comptroller General. See 39 Comp. Gen. 133 (1959).

[2] Of course, in "other civil cases" the expert witness' compensation may be paid in part or whole by the private party, if so directed by the court. See subsection (b) of Rule 706.

operating funds.[3] The second category includes "other civil actions," where the expert witness is to be compensated by the parties.

The matter that occasioned this opinion is a dispute between the Administrative Office and the Tennessee Valley Authority (TVA) over which Agency should pay the compensation of a court-appointed expert witness in a condemnation case initiated and litigated by TVA. The dispute centers on the interpretation to be given the lanugage in subsection (b) of Rule 706, which reads: "The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the Fifth Amendment."

We conclude that three interpretations can be drawn from the language quoted above. In considering all three interpretations, we think it well advised to consider the old judicial admonition that words, phrases, or language in a statute should not be construed in isolation, but in the context of the whole law and the overall congressional purpose. We also think it important to underscore the fact that the elastic word "may" is used in the language quoted above, rather than the restrictive word "shall." Thus, we must attempt to reason out why Congress settled on the word "may" and what kind of directional signal it is supposed to furnish.

First, it could be argued that the "which may be provided by law" language simply means that if funds are appropriated for the purpose of paying court-appointed expert witnesses' fees, then, compensation can be made therefrom. If not, the court must look elsewhere, presumably to the private party, to compensate the expert witness, or refrain from appointing one. This interpretation does not provide for a realistic scheme, because in condemnation cases the cost of the expert witness can never be charged to the landowner.[4] It is also wanting in criminal cases, because many accused are indigents and would be unable to compensate the expert witness. If accepted, this interpretation would have the ultimate impact of completely frustrating the stated congressional purpose: The possibility of any portion of a court-appointed expert witness' fees being passed on to the private parties in condemnation cases and in many criminal cases is, for all practical purposes, nonexistent.

A second interpretation is that the language "which may be provided by law" is used to give recognition to the fact that Congress has already provided funds for court-appointed expert witnesses in criminal cases through appropriations to implement the Criminal Justice Act.

[3] Generally, the Agency initiating and prosecuting actions on behalf of the United States will be the Department of Justice. However, where another agency has the authority to initiate and prosecute actions on behalf of the United States the court-appointed expert witness should be paid from that agency's general operating funds.

[4] *United States* v. *2,186.63 Acres of Land, Wasatch County, Utah*, 464 F. 2d 676, 678 (10th Cir. 1972); *United States* v. *Easement and Right-of-Way*, 452 F. 2d 729, 730 (6th Cir. 1971).

We think this is the most rational approach, because all funds received by an agency, for specific purposes or for its general operations, are provided by law. Unless Congress intended to refer to specific funds by this language, it was surplusage and unnecessary. We believe it was used to denote the two means by which an expert witness could be compensated in the first category of cases: in criminal cases by funds appropriated to implement the Criminal Justice Act and in condemnation cases by the litigating agency from its general operating funds.[5] This appears to be consistent with Rule 706 and existing law.[6] However, the language used to articulate this intent is far from clear.[7]

It could be argued that it was intended that court-appointed expert witnesses in criminal and condemnation cases be treated alike because they are included in the same category, and the Advisory Committee's Note to Rule 706 states that a "comprehensive scheme for court-appointed experts was initiated with the adoption of Rule 28 of the Federal Rules of Criminal Procedure in 1946" and that "[t]he present rule expands the practice to include civil cases." However, that would be an overbroad interpretation of that language. It is true that Rule 706 expanded the practice already employed in criminal cases to civil cases, but it does not necessarily follow that it also expanded the criminal method of compensation to civil cases. And the language of subsection (b) of Rule 706, which states that in "other civil cases" the parties are to compensate the expert witness, makes this position even more compelling. Moreover, two years after enactment of the Federal Rules of

---

[5] *See* note 3, *supra.*

[6] "Without exception, the decisions hold that in an original proceeding for the condemnation of land the costs arising in that proceeding fall on the condemnor. The reason therefor is that to take the land against the landowner's wishes and then charge him for the cost of taking would violate the constitutional prohibition against the taking of private property without just compensation." *Grand River Dam Authority* v. *Jarvis,* 124 F. 2d 914, 916 (10th Cir. 1942).

[7] A third interpretation would be that Congress intended to give the trial judge some discretion in determining whether a court-appointed expert witness should be compensated entirely by the United States or whether the parties should share this expense, as in "other civil cases." Perhaps this interpretation would be proper in criminal cases where the accused is not an indigent. It would not be proper in condemnation cases because the landowner could not be required to pay any part of a court-appointed expert witness' compensation. *See, e.g., United States* v. *2,186.63 Acres of Land, Wasatch County, Utah, supra,* note 4. It would reduce just compensation, a result prohibited by the Fifth Amendment. This interpretation does not seem reasonable, because no distinction was made between criminal and condemnation cases relative to the trial judge's discretion in determining whether the United States should pay the expert witness' fee in full or whether it should be borne by the parties.

Evidence, Congress has not appropriated any funds specifically for the purpose of Rule 706(b).[8]

We think the basic reason for establishing the special category for criminal and condemnation cases was simply to place those cases in which the United States is the sole compensator in a separate and distinct category. And, as we noted earlier, we conclude that the language "which may be provided by law" was intended to signify that the means for compensating court-appointed expert witnesses in the two types of cases in this category are different.

We also conclude that Rule 706 has the effect of making the fees of court-appointed expert witnesses ordinary expenses of litigation. For the Government such expenses are generally paid by the litigating agency rather than the Administrative Office. Indeed, because the monies appropriated to the Administrative Office are for the expense of maintenance of the courts, it would seem to violate 31 U.S.C. § 628 for that Office to use such funds for any other purpose.[9]

It is our opinion that in condemnation cases or "other civil cases," the agency that initiates and prosecutes the action has responsibility for compensating the court-appointed expert witness. In *United States* v. *109 Acres of Land,*[10] it is our opinion that had the expert witness been appointed pursuant to Rule 706, TVA would be responsible for compensating the expert witnesses. However, the expert witness was appointed before the Federal Rules of Evidence were enacted into law, and the court stated that the expert witness was appointed "[u]nder its inherent power so to do . . . as an aid to the Court in discharging its official duty." We think that while Rule 706 recognizes a trial judge's power to appoint his or her own expert, an expert witness appointed pursuant to Rule 706 and an expert appointed by the judge pursuant to his inherent power are not necessarily coequals.[11] Thus, we conclude that in this case the Administrative Office should pay the compensation of the court-appointed expert witnesses as expenses of maintenance of the courts.[12]

In the future the practice of the Department will be to pay for the full compensation of court-appointed expert witnesses in condemnation

---

[8] The Senate and House reports accompanying H.R. 5463, a bill to establish rules of evidence for certain courts and proceedings, state that would "entail no cost to the Government of the United States." *See* S. Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974) and H.R. Rep. No. 650, 93rd Cong., 1st Sess. 19 (1973). That is undoubtedly an over-broad statement unless Congress did not intend the purpose for enacting the rules to be carried out. Moreover, as noted in the text, funds were already being provided for expert witnesses in criminal cases, and their fees would not be passed on to the landowner in condemnation cases. However, this language can serve as an indication that Congress was of the opinion that the funds to carry out the purpose of the new law already existed.

[9] That section states that "Except as otherwise provided by law, sums appropriated for the various branches of expenditure in the public service shall be applied solely to the objects for which they are respectively made, and for no others."

[10] 404 F. Supp. 1392 (D. Tenn. 1975).

[11] *See* note 1, *supra.*

[12] *See* note 1, *supra.*

cases and as directed by the court in "other civil cases" where it is the litigating agency. However, we are of the opinion that it would be more efficient and less burdensome from an administrative point of view, if Congress appropriated funds to the Administrative Office for the purpose of compensating all court-appointed expert witnesses.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
